# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES BRESLIN, et al., | : | CIVIL ACTION |
|     Plaintiffs | : | |
| | : | |
| vs. | : | NO. 12-0360 |
| | : | |
| JOHN MORGENSTERN, | : | |
|     Defendant | : | |

## M E M O R A N D U M

**STENGEL, J.**                                                                                August 22, 2018

      In February 2012, the plaintiffs brought this civil rights action ("Breslin II") in the Court of Common Pleas of Cumberland County against Dickinson Township, Raymond Jones, Daniel Wyrick, Allyn Perkins, Laura Portillo, Anthony Zizzi,[1] Susan J. Smith, Duncannon Borough, and John P. Morgenstern. The action was timely removed to federal court. In July 2009, the plaintiffs brought a very similar civil rights action against Dickinson Township, Raymond Jones, Allyn Perkins, Daniel Wyrick, Anthony Zizzi, and Ed Schorpp in the Middle District of Pennsylvania. See Breslin v. Dickinson Township, et al., 09-cv-1396 ("Breslin I").

      Breslin II allegedly "addresses a number of violations of the plaintiffs' rights as guaranteed by the First, Fourth, and Fourteenth Amendments to the Constitution of the United States." Defendant Morgenstern filed a motion to dismiss for failure to state a claim upon which relief can be granted. The plaintiffs responded. For the following reasons, I will grant the motion in its entirety.

---

[1] On February 5, 2016, the plaintiffs filed a notice of voluntary dismissal as to Defendant Zizzi only, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A). See Document #118.

## I. BACKGROUND

The plaintiffs are three retired senior military officers who are residents of Dickinson Township, Cumberland County, Pennsylvania.. The complaint includes a number of violations of the plaintiffs' rights as guaranteed by the First, Fourth, and Fourteenth Amendments. Specifically, the plaintiffs allege that their First Amendment rights to comment on matters of public concern free of retaliation, and their rights to petition for a redress of grievances free of retaliation were violated by the defendants. Further, they allege that their rights to privacy as protected by the Fourth Amendment and their Equal Protection rights under the Fourteenth Amendment were violated by the defendants, and that several of the defendants conspired to knowingly make false claims of potential criminal wrongdoing and knowingly enabling false claims and baseless innuendoes to be made public. This conduct was allegedly done with the express intent of destroying the plaintiffs' reputations, tainting potential jury pools, and intimidating the plaintiffs from exercising their rights of expression and to petition for redress.

The plaintiffs further allege that the defendants hid certain information from them after the plaintiffs requested that information pursuant to Pennsylvania's Right-to-Know laws. They also claim that the defendants forced the plaintiffs to pay hundreds of dollars of fees in connection with these requests where other citizens did not have to pay. The information requested was allegedly directly related to the original complaint filed in Breslin I.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Following the Supreme Court decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), pleading standards in federal actions have shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to allege facts sufficient to show that the plaintiff has a plausible claim for relief. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all plausible inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

It remains true that the Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Rather, the Rules require "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In recent rulings, however, the Supreme Court has rejected language in Conley stating that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 561. Rather, a "complaint must allege facts suggestive of [the proscribed] conduct," Twombly, 550 U.S. at 564, and it must contain enough factual matters to suggest the required elements

3

of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In assessing the merits of a motion to dismiss, courts must be careful to recognize that, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. "[O]nly a complaint that states a *plausible* claim for relief survives a motion to dismiss." Id. at 679 (emphasis added). In recognition of these principles, courts must first identify those allegations in a complaint that are mere conclusions and are therefore not entitled to the assumption of truth, and next, consider whether the complaint's factual allegations, which *are* entitled to a presumption of truth, plausibly suggest an entitlement to relief. Id. (emphasis added).

While Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief," FED.R.CIV.P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Twombly, 550 U.S. at 555, the plaintiff must provide "more than labels and conclusions." Byrne v. Cleveland Clinic, 684 F. Supp. 2d 641, 649 (E.D. Pa. 2010)(citing Twombly, 550 U.S. at 554). A facially plausible claim may not be supported by conclusory allegations, but must allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

4

## III. DISCUSSION

### A. Constitutional Violations – Counts II and VIII

In Count II, the plaintiffs allege that Moving Defendant John Morgenstern, along with other defendants, violated their rights under the First and Fourteenth Amendments to the U.S. Constitution "by using and abusing legal process in the 1396 litigation as a means for harassing and intimidating the plaintiffs in retaliation for their exercising rights to petition for redress. See Compl. ¶ 162. In Count VIII, Plaintiff Charles Breslin alleges that Defendant Morgenstern, with malice aforethought, acquired Plaintiff Breslin's Social Security Number and intentionally misused it, in violation of his Fourth Amendment right to privacy and in violation of Pennsylvania law. See Compl. ¶ 224.

To the extent they raise constitutional violations, these two claims were brought against Defendant Morgenstern pursuant to 42 U.S.C. § 1983. Under 42 U.S.C. § 1983, a private party may recover in an action against any person acting under the color of state law who deprives the party of his constitutional rights. The relevant text of § 1983 provides, in part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or any other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Section 1983 does not by itself confer substantive rights, but rather, provides a remedy for redress when a constitutionally protected right has been violated. Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985) (citing Baker v. McCollan, 443 U.S. 137, 140,

5

144 n.3 (1979)). Thus, in order to bring a successful claim for relief under § 1983, "a plaintiff must demonstrate that the defendant, acting under color of law, deprived him of a right secured by the Constitution or the laws of the United States." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).

These two claims fail because Defendant Morgenstern is not a state actor, and any alleged conduct attributed to him cannot be shown to have been "under color of law." The Third Circuit has held that "attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court." Angelico v. Lehigh Valley Hospital, Inc., 184 F.3d 268, 277 (3d Cir. 1999). In order to find that a private attorney was a "state actor" for purposes of § 1983, the plaintiffs "must point to some action that is 'fairly attributable' to the state." Id. at 277. That burden cannot be satisfied here. The Third Circuit set forth the following test for determining when a private attorney performed some action that is "fairly attributable" to the state:

> To do this, a plaintiff must show (l) that the attorney defendants' acts were the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, and (2) that the attorney defendants may fairly said to be state actors.
>
> A person may be found to be a state actor when (1) he is a state official, (2) he has acted together with or has obtained significant aid from state officials, or (3) his conduct is, by its nature, chargeable to the state.

Id. at 277. Here, there are no allegations that could possibly lead to the conclusion that Moving Defendant Morgenstern was a state actor. First, there is no claim that he was a state official. To the contrary, Mr. Morgenstern is identified in the complaint as a private

6

attorney of the firm Deasey Mahoney Valentini & North. See Comp. ¶ 3(h). Second, the claims against Mr. Morgenstern relate solely to his representation of the defendants in Breslin I. The plaintiffs allege that he filed motions, conducted depositions, and participated in court-ordered conferences. There is nothing about any of these acts that requires significant aid from state officials. Finally, all of the acts charged to Mr. Morgenstern are those which private attorneys traditionally take in the course of representation in litigation. None of his alleged conduct would traditionally be charged to the state. Accordingly, because the complaint identified Mr. Morgenstern as a private attorney, and because there are no facts to support a claim that he was a "state actor" for purposes of 42 U.S.C. § 1983, I will grant Mr. Morgenstern's motion to dismiss him as a defendant from the constitutional claims in Counts II and VIII.

**B. State Law Abuse of Process Claim – Count II**

In addition to bringing the claims in Count II as constitutional violations, the plaintiffs allege that the defendants' actions were also violations of state law. Under Pennsylvania law, the gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it. McGee v. Feege, 535 A.2d 1020, 1023 (Pa. 1987). Among other prerequisites, a claim for abuse of process requires a plaintiff to establish that the defendant used a legal process against the plaintiff primarily to accomplish a purpose for which the process was not designed. Hart v. O'Malley, 647 A.2d 542, 551 (Pa.Super. 1994); Rosen v. American Bank of Rolla, 627 A.2d 190, 192 (Pa.Super. 1993). To satisfy the "perversion of process" element, the plaintiff must show some definite act or threat not authorized by the process, or aimed at an objective not

legitimate in the use of the process.  Id.  Furthermore, there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.  Id.  As the Third Circuit noted, the point of liability is reached when the utilization of the procedure for the purpose for which it was designed becomes so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure.  Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 308 (3d Cir. 2003).

Therefore, since the tort of "abuse of process" is defined as the use of a legal process against another primarily to accomplish a purpose for which it is not designed, in order to establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed, and (3) harm has been caused to the plaintiff.  Shiner v. Moriarty, 706 A.2d 1228, 1236 (Pa.Super. 1998).

Here, the plaintiffs have not pleaded facts which would permit such a finding.  A review of the allegations in the complaint show that the defendants were trying to achieve the results they seek in this litigation, i.e., a favorable outcome on the merits.  The actions which the plaintiffs now claim are an abuse of process are discovery matters to which the plaintiffs failed to object when they occurred.  These actions either took place with the sanction of the court, or were deemed by the court to be matters unworthy of judicial intervention in the course of these discovery proceedings.  Accordingly, I will grant Defendant Morgenstern's motion to dismiss him entirely as a defendant in Count II.

**C. State Law Invasion of Privacy Claim – Count VIII**

In addition to bringing the claims in Count VIII as constitutional violations, Plaintiff Breslin alleges that Defendant Morgenstern's actions were also violations of state law. Mr. Breslin alleges that at a meeting in February 2011, he informed Mr. Morgenstern that he would provide his military and medical records to Mr. Morgenstern, but he would not provide his social security number for any purpose. See Count VIII, Compl. ¶ 224. Mr. Breslin explained that his sensitivity to providing that number stemmed from an experience of identity theft. Nevertheless, the plaintiff alleges, Mr. Morgenstern acquired the social security number and intentionally misused it. Id. at ¶ 225. Knowing of Mr. Breslin's concerns, Mr. Morgenstern allegedly faxed the social security number to a third person, namely, Defendant Susan Smith, the Solicitor for Dickinson Township, Mr. Morgenstern's client. Mr. Breslin claims that the abuse and misuse of his social security number was deliberate and in retaliation for bringing Breslin I. However, because the alleged transmission was between Attorney Morgenstern and a representative of his client, this state law claim for invasion of privacy fails.

As the Third Circuit has noted:

> Pennsylvania law recognizes four torts under the umbrella of invasion of privacy: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places the other in a false light before the public.

Boring v. Google, Inc., 362 F.App'x 273, 278 (3d Cir. 2010) (quoting Burger v. Blair Med. Assocs., Inc., 964 A.2d 374, 376-77 (Pa. 2009) (citing RESTATEMENT (SECOND) OF

9

TORTS §§ 652B-E)).. Given the alleged facts presented here, only two of the four choices can be considered, i.e., "unreasonable intrusion upon the seclusion of another," and "unreasonable publicity given to another's private life." Under Pennsylvania law:

> To state a claim for intrusion upon seclusion, plaintiffs must allege conduct demonstrating an intentional intrusion upon the seclusion of their private concerns which was substantial and highly offensive to a reasonable person, and aver sufficient facts to establish that the information disclosed would have caused mental suffering, shame, or humiliation to a person of ordinary sensibilities.

Boring, 362 F.App'x at 278-279 (quoting Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co., 809 A.2d 243, 247 (Pa. 2002)). Similarly, "to state a claim for publicity given to private life, a plaintiff must allege that the matter publicized is (l) publicity, given to (2) private facts, (3) which would be highly offensive to a reasonable person, and (4) is not of legitimate concern to the public." Boring, 362 F.App'x at 280 (quoting Harris v. Easton Pub. Co., 483 A.2d 1377, 1384 (Pa. Super. 1984) (citing RESTATEMENT (SECOND) OF TORTS § 652D).

Here, pursuant to an Order entered by Magistrate Judge Martin C. Carlson on April 26, 2011, all plaintiffs were required to turn over their social security numbers to the defendants in Breslin I. See Breslin I, Document #112 at 19. Judge Carlson noted that such disclosure was "routinely approved by the courts." Id. at 13. In a Memorandum dated May 19, 2011, Judge Carlson noted that the plaintiffs had complied with all discovery requests. See Breslin I, Document #130 at 4.

Because Defendant Smith was the legal representative for Dickinson Township, Mr. Morgenstern could not have invaded Plaintiff Breslin's privacy by transmitting a document containing his social security number to her. Dickinson Township was involved in active litigation, and as part of that litigation, Mr. Morgenstern provided information relating to that litigation to his client - the legal representative of Dickinson Township.[2] An attorney providing discoverable information to his client's legal representative is far from "highly offensive to a reasonable person."

Further, there are no allegations that Mr. Breslin's social security number was disclosed to any party outside the litigation or that any party used his social security number improperly. Accordingly, I will grant Mr. Morgenstern's motion to dismiss him entirely as a defendant in Count VIII.

### D. Count VII – Violation of State Law Rights to be Free of "False Light" Misrepresentations, Defamation, Slander, and Libel, and to be Free of the Pernicious Effects of Civil Conspiracies.

In Count VII, the plaintiffs allege that Defendants Daniel Wyrick, Susan Smith, Allyn Perkins, and John Morgenstern, intentionally engaged in a campaign to present the plaintiffs in a "false light." See Compl. ¶ 213. Specifically for the purposes of this motion to dismiss, the plaintiffs allege that Defendant Morgenstern colluded with Defendant Wyrick's "viscous" attacks.[3] See Count VII, Compl. ¶ 217. They also allege

---

[2] Pursuant to the Second Class Township Code, "The township solicitor shall direct and control the legal matter of the township." See 53 P.S. § 66101. Accordingly, Defendant Smith was the legal representative of Dickinson Township during the relevant period.

[3] By the context of this sentence, I will assume that the plaintiffs meant to characterize Defendant Wyrick's attacks as vicious.

11

that Mr. Morgenstern publically accused the plaintiffs of wiretapping, of posing a threat to his personal safety, and of using their cell phones to transmit deposition testimony to recipients outside the deposition room. Id. at ¶ 221. He is further alleged to have accused the plaintiffs' counsel of being "delusional." Id. This behavior, the plaintiffs contend, constitutes a violation of the plaintiffs' state law rights to be free of "false light" misrepresentations, defamation, slander, and libel, and to be free of the pernicious effects of civil conspiracies. Id. at ¶ 221.

First, the plaintiffs can have no claim of false light or defamation against Mr. Morgenstern for accusing a third person of being delusional. Second, apparently the statements attributed to Mr. Morgenstern were related to his representation of the defendants in Breslin I. The alleged collusion with Mr. Wyrick was based on Mr. Morgenstern feeding Mr. Wyrick, his client, information he received in discovery. The complaint is silent as to where the other statements were made. The plaintiffs fail to identify the nature of the alleged statements, the date on which statements took place, the audience of the alleged statements, and the format in which such statements were made. I agree, however, with Mr. Morgenstern that the statements alleged were most likely included either in pleadings or took place during a deposition. Thus, his challenged statements are protected by an absolute privilege. Pennsylvania has adopted Section 587 of the Restatement (Second) of Torts. See Pawlowski v. Smorto, 588 A.2d 36, 42 (Pa. Super. 1991). Pursuant to that section:

> A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning

> another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

See Restatement (Second) of Torts, § 587. Mr. Morgenstern served as the attorney for multiple defendants in Breslin I. He made filings with the court as part of that litigation, and participated in depositions on behalf of his clients. Mr. Morgenstern insists that, other than these actions, he has never had any contact with the plaintiffs or made any statements about them. "It is a well-established principle of Pennsylvania law that the filing of a complaint and other pleadings is protected by an absolute privilege." Werner v. Platzer-Zyberk, 51 Pa. D. & C. 4th 192 (2001), reversed on other grounds, 799 A.2d 776 (Pa. 2002), citing Smith v. Griffiths, 476 A.2d 22, 24 (Pa. 1984). The privilege is impenetrable:

> Pursuant to the judicial privilege, a person is entitled to absolute immunity for communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought. This privilege is based on the public policy which permits all suiters, however bold and wicked, however virtuous and timid, to secure access to the courts of justice to present whatever claims, true or false, real or fictitious, they seek to adjudicate.

Bochetto v. Gibson, 860 A.2d 67, 71 (Pa. 2004). "The key is whether the pertinent communication was undertaken in connection with the representation of a client in a judicial proceeding." Brown v. Delaware Valley Transplant Program, 539 A.2d 1372 (Pa. Super. 1988). All of the alleged statements attributed to Mr. Morgenstern were undertaken in connection with his representation of the defendants in Breslin I. Thus,

statements by a party, a witness, counsel, or a judge cannot be the basis of a defamation action whether they occur in the pleadings or in open court. Binder v. Triangle Publications , Inc.,442 Pa. 319, 323, 275 A.2d 53 (Pa. 1971).

Further, the purpose for which the privilege exists cannot fully be achieved by limiting the privilege to structured or formal proceedings. To permit an attorney to best serve a client, the privilege must be broad enough to include occasions when a client's cause is being advocated under less formal circumstances. Thus, the privilege extends to and includes preliminary demands, as well as informal conferences and negotiations conducted after litigation has been commenced or when litigation is seriously contemplated. Pelagatti v. Cohen, 370 Pa. Super. 422, 536 A.2d 1337 (Pa. Super. 1987) (citing Smith, 476 A.2d at 24). Accordingly, the plaintiffs' claim against Mr. Morgenstern must fail, and I will grant Mr. Morgenstern's motion to dismiss him as a defendant from Count VII.

### E. Sanctions for Bringing Time-Barred and Frivolous Claims

In his motion to dismiss, Defendant Morgenstern insists that the plaintiffs' claims are time-barred and "wholly frivolous," and that "it is clear that such claims have been brought in bad faith." Thus, he argues, plaintiffs' counsel is liable for sanctions pursuant to 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously *may be* required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

14

28 U.S.C. § 1927 (emphasis added). The statute, therefore, limits attorney sanctions imposed thereunder to instances where an attorney has: (1) multiplied the proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or with intentional misconduct. See In re Prudential Ins. Co. Am. Sales Practice Litig. Actions, 278 F.3d 175, 188 (3d Cir. 2002). The purpose of such sanctions is to deter an attorney from intentionally and unnecessarily delaying judicial proceedings. LaSalle Nat'l Bank v. First Conn. Holding Group LLC XXIII, 287 F.3d 279, 288 (3d Cir. Apr. 24, 2002). Sanctions are limited to the costs that result from such delay. Id.

Courts should exercise this sanctioning power only in instances of a serious and studied disregard for the orderly process of justice. Ford v. Temple Host., 790 F.2d 342, 347 (3d Cir. 1986) (quotations omitted). "The power to sanction under § 1927 necessarily 'carries with it the potential for abuse, and therefore the statute should be construed narrowly and with great caution so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law.'" LaSalle, 287 F.3d at 289 (quoting Mone v. Commn'r of Intern. Revenue, 774 F.2d 570, 574 (2d Cir. 1985)).

Due to this potential for abuse, it has been well-established that sanctions may not be imposed under § 1927 without a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal. LaSalle, 287 F.3d at 289. Under § 1927, an attorney's "conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." Baker Industr. Inc. v. Cerberus, Ltd., 764 F.2d 204, 208 (3d Cir. 1985).

Further, courts "should resist temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff ultimately did not prevail, his action must have been unreasonable or without foundation." Deyo v. St. Luke's Hospital and Health Network, 2010 U.S. Dist. LEXIS 39014, *8 (E.D. Pa. Apr. 19, 2010).

Here, the plaintiffs' claims against Defendant Morgenstern are not outlandishly frivolous or necessarily poorly-reasoned. The claims stem from three citizens who honestly believe that their constitutional rights and various state law rights were violated. I can find nothing in the record that shows that the plaintiffs' attorney acted in bad faith or in such an egregious nature that would warrant sanctions under § 1927.

In a separate motion for sanctions, Mr. Morgenstern argues that, in addition to sanctions under § 1927, he is entitled to sanctions against the plaintiffs' counsel in the form of all costs and attorneys' fees, pursuant to Rule 11 of the Federal Rules of Civil Procedure. Rule 11(b) permits a district court to sanction parties or attorneys if "a pleading, written motion, or other paper...[is] presented for any improper purpose[;]...the claims, defenses, and other legal contentions are [un]warranted by existing law[;]...the factual contentions have [no] evidentiary support[;] [or]...the denials of factual contentions are [un]warranted on the evidence."

Rule 11 "imposes a non-delegable duty upon the signing attorney to conduct his own independent analysis of the facts and laws which forms the basis of a pleading or motion," Garr v. U.S. Healthcare, Inc., 22 F.3d 1274, 1277 (3d Cir. 1994), and "provides that attorneys may be sanctioned if they, among other things, fail to make a reasonable

inquiry into the legal legitimacy of the pleading." Ario v. Underwriting Members of Syndicate 53 of Lloyds, 618 F.3d 277, 297 (3d Cir. 2010).

When evaluating conduct allegedly in violation of Rule 11, "a district court must determine whether the attorney's conduct was objectively reasonable under the circumstances." Id. Reasonableness is the "objective knowledge or belief at the time of the filing of a challenged paper that the claim was well grounded in law and fact." Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 289 (3d Cir. 1991). The court should impose sanctions only "in the exceptional circumstances where a claim or motion is patently unmeritorious or frivolous." Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988).

Again, I cannot find that the claims against Mr. Morgenstern are patently unmeritorious or frivolous. The claims stem from three citizens who honestly believe that their constitutional rights and various state law rights were violated by the defendants. I can find nothing in the record that shows that the plaintiffs' attorney acted in bad faith or in such an egregious nature that would warrant sanctions under Rule 11. Accordingly, I will deny Mr. Morgenstern's request for sanctions in his motion to dismiss and in his separate motion for sanctions.

An appropriate Order follows.